EUGENE WHITE, Plaintiff, *v.* JOHN AUGELLO and Others, Defendants.

Supreme Court, Oneida County, November 17, 1931.

*David J. Goldstein*, for the plaintiff.

*Lee, Brennan & Bastow*, for the defendants.

SMITH, EDWARD N., J.   On the 3d of July, 1923, the plaintiff owned certain real estate which was subject to a mortgage held by the Rome Savings Bank for $18,500; on that day he conveyed the premises to John Augello and Rosaria Augello by deed in which the grantees agreed and assumed to pay said mortgage as a part of the purchase price.   The grantees on the same day executed to the plaintiff a second purchase-money mortgage on said premises in the sum of $15,150.   On July 1, 1925, the defendants Augello conveyed the premises to a corporation known as Family Theatre, Inc., by deed in which the grantees agreed and assumed to pay the two aforementioned mortgages.   On the 30th day of June, 1927, the Family Theatre, Inc., deeded the premises to one Louis Goldberg and wife by deed in which said Louis Goldberg assumed and agreed to pay the first mortgage and also the second mortgage, then held by the plaintiff, upon which there was then due the sum of $12,541.64.

When in a deed a grantee assumes and agrees to pay, as a part of the consideration of the grant, a mortgage upon the premises conveyed, the relationship of the mortgagor to the mortgagee is, as between himself and his grantee, altered; the mortgagor ceases to be the principal obligor and takes on the relationship of a surety, while a grantee who has assumed and agreed to pay the mortgage becomes the principal debtor.   So in this case, when the defendants Augello conveyed the property to the Family Theatre, Inc., the latter, having assumed in the grant to pay the mortgages, became

the principal obligor, while the Augellos remained as sureties; and when the Family Theatre, Inc., conveyed the premises to Louis Goldberg by deed in which he assumed and agreed to pay the mortgages Goldberg became the principal obligor, the Family Theatre, Inc., became surety and the Augellos stood in the same relationship.

On or about the 18th of January, 1928, the plaintiff, Eugene White, executed a subordination agreement whereby he agreed to subordinate his second mortgage upon the property to a certain mortgage about to be executed by the Goldbergs to one Abraham W. Rizika. This subordination agreement was on the 18th of January, 1928, recorded in the Oneida county clerk's office; and on the same day said Goldbergs executed and delivered to said Rizika a mortgage upon the premises covered by aforesaid mortgages, to secure the payment of the sum of $1,000, stated to be a collateral mortgage, dated January 18, 1928, and duly recorded. The mortgage states that it is given as collateral security on a promissory note or notes to an amount not to exceed $1,000, and the money to be advanced within three months at the discretion of the party of the second part. There was advanced $300 of the amount.

There came a time when the premises were damaged by fire, and the insurance company paid the damage by a check for the sum of $3,500, which was drawn payable to the Rome Savings Bank and to the plaintiff, Eugene White, indorsed by both and turned over by them to Louis Goldberg, the then owner of the property, who received the proceeds of the check.

The second mortgage contained a provision that it was payable at the the rate of $125 a month. The interest due was first to be deducted, and the balance of the payment was to be applied to reduce the principal of the debt.

While Mr. Goldberg was making improvements to the property, such arrangements were made between him and Mr. White that Mr. White agreed not to enforce the payment of more than the interest upon the mortgage until after the improvements were completed. The improvements were not completed, nor did all of the proceeds of the insurance moneys go into the improvement of the property. Subsequently the Rome Savings Bank foreclosed its mortgage and the property was sold for $10,000, and there was a deficiency of about $12,000, for which judgment was taken against Louis Goldberg.

This action is brought by the plaintiff to recover against the defendants Augello on account of their obligation on his mortgage debt, and against the defendant Family Theatre, Inc., on account of its assumption of and agreement to pay this mortgage debt,

contained in the deed of the premises from the Augellos to it. Louis Goldberg is in bankruptcy.

The defendants contest the claim of the plaintiff on the ground that, so far as he was concerned, they stood in the relationship of sureties, and that his conduct and dealings with Goldberg in respect of the execution of the subordination agreement, of the insurance moneys, and of the postponement of the time of payment of the principal of the mortgage debt, operated, as to them, as a release of their obligation as sureties to the plaintiff.

The agreement between the plaintiff and Goldberg for the postponement of the payments of the installments of principal due according to the terms of the mortgage was supported by an adequate consideration, in that it was based upon the agreement of Goldberg to make certain improvements upon the property, the effect of which was to enhance the value of the mortgaged property. This agreement, the indorsement of the check for the insurance moneys by the plaintiff over to Goldberg and the execution of the subordination agreement were transactions carried on without knowledge on the part of the defendants or either of them, nor have they consented to or acquiesced therein.

The defendants have offered no evidence to show that the plaintiff White had any actual knowledge at the time of the transactions aforementioned of the agreements on the part of the Family Theatre, Inc., or on the part of Goldberg contained in the deeds, whereby said parties assumed and agreed to pay the plaintiff's mortgage as a part of the consideration of the transfer of the title to the land, and the record is devoid of any evidence in this respect, apart from the fact that the deeds containing the agreements were recorded and the fact that Goldberg made payments of installments due upon the mortgage to the plaintiff. According to the record, and as between Goldberg and the defendants, the former became the principal obligor and the defendants became sureties.

It is a well-settled principle of the law of principal and surety that in case of any arrangement whereby the relationship between the creditor and the principal in respect of the debt is altered the effect of that alteration without the knowledge and consent of the surety works a discharge of the liability of the surety. (*New York Life Ins. Co.* v. *Casey*, 178 N. Y. 381; *Calvo* v. *Davies*, 73 id. 211, 216; *Marshall* v. *Davies*, 78 id. 414; *Paine* v. *Jones*, 76 id. 274, 278.) This rule, however, is not absolute, but it depends upon whether the creditor had knowledge of the alteration of the relationship or that the relationship of principal and surety had been created. If the defendants would be relieved from the burden of their obligation, it was incumbent upon them to show that the fact that as between

them and Goldberg they had become sureties and Goldberg the principal was brought to the knowledge of the creditor, the plaintiff, prior to the time of the alleged acts on the part of the plaintiff. So far as the record discloses, the plaintiff had no knowledge that the Family Theatre, Inc., had assumed and agreed to pay the Augello mortgage held by him, nor that Goldberg had assumed and agreed to pay said mortgage. The fact that the deeds to these parties were recorded did not operate as notice to him. He was under no obligation to search the records in this respect; he was not a party to the deeds containing the assumption agreements and was not chargeable with any notice by reason of the record thereof. (*Mead* v. *Parker*, 29 Hun, 62; *Title Guaranty & Trust Co.* v. *Weiher*, 30 Misc. 250.) The fact that Goldberg had taken title to the property in no wise implied that he had assumed and agreed to pay the mortgage; and this would be true as to a grantee. The assumption agreement was not an essential part of the deed, and the deed itself carried only the implication of law that it was made subject to the existing mortgages. A principal debtor may not, as against his creditor, without notice to his creditor, change his relationship to such creditor from that of principal to surety.

The foregoing statement in respect of the necessity of notice would apply to the extension of the time to pay the principal installments, and would also apply to the acts of the plaintiff in reference to the insurance moneys, so far as the surety relationship is concerned. But would it apply to the subordination agreement? To the extent at least of $300 the plaintiff by the subordination agreement had allowed a lien to be created ahead of his second mortgage.

The acts of the plaintiff in extending the time for payment of the mortgage, in turning over the insurance moneys to Goldberg and in executing the subordination agreement must be construed, so far as the Augellos are concerned, in the light of the plaintiff's known relationship to them. So far as he was concerned, having no knowledge of the assumption agreements contained in the deeds to the Family Theatre, Inc., and to Goldberg, they stood in the relationship of primary obligors. He, however, knew of these transfers of the title, for the reason that the Family Theatre, Inc., and Goldberg made payments upon the mortgage, and he knew that the title to the property had been transferred out of the Augellos; and there did arise, by reason of these transfers, a *quasi* surety relationship to the extent that the land was the primary security, and the obligation of the Augellos as *quasi*-sureties was only to the extent that the value of the land failed to satisfy the mortgage. (*Murray* v. *Marshall*, 94 N. Y. 613.) The foregoing was a case where there was an extension of the time of the payment

of a mortgage by a valid agreement with the grantee who had taken a deed subject to the mortgage but without assuming its payment. Judge FINCH, writing for the court, said: "While * * * no strict and technical relation of principal and surety arose between the mortgagor and his grantee from the conveyance subject to the mortgage, an equity did arise which could not be taken from the mortgagor without his consent, and which bears a very close resemblance to the equitable right of a surety, the terms of whose contract have been modified. We cannot accurately denominate the grantee a principal debtor, since he owes no debt, and is not personally a debtor at all, and yet, since the land is the primary fund for the payment of the debt, and so his property stands specifically liable to the extent of its value in exoneration of the bond, it is not inaccurate to say that as grantee, and in respect to the land, and to the extent of its value, he stands in the relation of a principal debtor, and to the same extent the grantor has the equities of a surety. This follows inevitably from the right of subrogation which inheres in the original contract of sale and conveyance. It is a definite and recognized right, which, in the absence of an express agreement, will be founded upon one implied. * * * When the mortgagor in this case sold expressly subject to the mortgage, remaining liable upon his bond, he had a right as against his grantee to require that the land should first be exhausted in the payment of the debt. Presumably the amount of the mortgage was deducted from the purchase price, or at least the transfer was made and accepted in view of the mortgage lien. Seller and buyer both acted upon the understanding that the land bound for the debt should pay the debt as far as it would go, and their contract necessarily implied that agreement. Through the right of subrogation the vendor could secure his safety, and that right could not be invaded with impunity. It was invaded. When the creditor extended the time of payment by a valid agreement with the grantee, he at once, for the time being, took away the vendor's original right of subrogation. He suspended its operation beyond the terms of the mortgage. He put upon the mortgagor a new risk not contemplated, and never consented to. The value of the land, and so the amount to go in exoneration of the bond, might prove to be very much less at the end of the extended period than at the original maturity of the debt, and the latter might be increased by an accumulation of interest. The creditor had no right thus to modify or destroy the original right of subrogation. What he did was a conscious violation of this right, for the fact that he dealt with the grantee for an extension of the mortgage shows that he knew of the conveyance, and that it left the land bound in the hands

of the grantee. Knowing this he is chargeable with knowledge of the mortgagor's equitable rights, and meddled with them at his peril. But it does not follow that the vendor was thereby wholly discharged. The grantee stood in the *quasi* relation of principal debtor only in respect to the land as the primary fund, and to the extent of the value of the land. If that value was less than the mortgage debt, as to the balance he owed no duty or obligation whatever, and as to that the mortgagor stood to the end, as he was in the beginning, the sole principal debtor. From any such balance he was not discharged, and as to that no right of his was in any manner disturbed. The measure of his injury was his right of subrogation, and that necessarily was bounded by the value of the land. The extension of time, therefore, operated to discharge him only to the extent of that value. At the moment of the extension his right of subrogation was taken away, and at that moment he was discharged to the extent of the value of the land, since the extension barred his recourse to it, and once discharged he could not again be made liable. From that moment the risk of future depreciation fell upon the creditor who by the extension practically took the land as his sole security to the extent of its then value, and assumed the risk of getting that value out of it in the future."

I think the foregoing principles are applicable here in respect of the extension of time, the dealings with the insurance moneys, and the subordination agreement, and that unless the record shows the value of the land at the time thereof the plaintiff must fail.

Some interesting facts bearing upon the conduct of the plaintiff appear in the record. The transfer from the Family Theatre, Inc., to Goldberg was June 30, 1927, and the balance then due upon the White mortgage was $12,541.64. There were no payments of principal down to January 1, 1928, and the balance due upon the mortgage on that day was $12,541.64, and there have been no payments since. White knew that the title was in Goldberg at about the time he acquired the title. The insurance moneys amounted to $3,500 or $3,600; these were turned over by the plaintiff to Goldberg. Goldberg's statement as to what he did with the proceeds of the insurance moneys is indefinite and somewhat nebulous. Some of the money he used for his own private purposes, unrelated to the property. He says he paid the Rome Savings Bank $700, which must have been upon interest; that he paid for masons' supplies, some of which were purchased before the fire; that he paid labor bills incurred in remodeling the building before the fire, and that he quit work one month after the fire. The insurance moneys, *pro tanto*, took the place of the real estate and should have been

applied to pay upon the payment of mortgages or put in to repair the damage caused by the fire, and the plaintiff owed some duty to see that this was done. The way the insurance moneys were handled indicates gross carelessness on the part of the plaintiff and little regard for his duties.

The premises were sold at foreclosure sale in October, 1928; they were bid in by the Rome Savings Bank for $10,000. This is the only evidence as to the value of the property at the time of the transactions by the plaintiff which are complained of. The plaintiff owed the duty to offer evidence on this subject and to show by more definite proof than was presented what became of the $3,500 or $3,600 of insurance moneys. The measure of the value of the property in January, 1928, was not the amount at which it was sold at the foreclosure sale in October, 1928.

At the close of the evidence in the case, both parties having made motions for the direction of a verdict, it was stipulated that the court may take these motions under advisement, examine the record and decide the matter with the same force and effect as if the jury were present. Under the authority of *Murray* v. *Marshall* (*supra*) I am constrained to grant the motions of the defendants for a dismissal of the complaint as against each of them; but, in view of the intricacies of the law involved and of the fact that the action was not tried having in mind the law applicable, and that no attempt was made to prove facts essential in order to reach a just determination of the equities, this motion is granted without prejudice to the right of the plaintiff to bring a new action, upon the payment of the taxable costs and disbursements, including one-half of the costs of the stenographer's minutes. Let the clerk enter in his minutes, as of the day of the motions, an order accordingly.