In the Matter of the Estate of Henry W. T. Steinway, Deceased.

Surrogate's Court, New York County, June 22, 1940.

*Eugene Cohn,* for the petitioner.

*Sullivan & Cromwell* [*Albert Andrews* of counsel], for the respondents.

FOLEY, S. Under the will of Henry W. T. Steinway, a legacy of $10,000 was given to J. George Grill, who has assigned it to the petitioner in this proceeding instituted to compel payment of the legacy. Against this legacy the executors seek to set off a debt of $3,800 which Mr. Grill owed to the testator. By concession of counsel, the only question for determination is whether this counter-claim of the estate is barred by the Statute of Limitations.

The surrogate holds that the setoff against the legacy is valid and effective. He also specifically holds that the claim asserted as a setoff is not barred by the Statute of Limitations.

That claim arose out of two promissory notes payable to the order of Henry W. T. Steinway. They were made by a corporation, the Grill Agency, were signed by J. George Grill, as president, and were indorsed by Mr. Grill, individually and as treasurer of another corporation. The notes are identical in every respect except as to the date of execution. Each is in the face amount of $5,000 and provides for a payment of $100 on December 1, 1930, and $100 on the first day of each and every month thereafter until the full amount was paid. Each contains an acceleration clause which reads as follows: " Upon failure to pay any of the above install-ments, all subsequent installments shall become due and payable at once, unless an extension is granted."

The monthly installments of principal were paid on December 1, 1930, and in each succeeding month until May, 1932. The last installment on each note was paid on May 6, 1932. Nothing has been paid since that date. The testator died June 26, 1939. The executors seek to recover all of the sums falling due within the six years preceding the date of his death, an amount concededly aggregating $3,800.

It is the contention of the petitioner that the acceleration clause in each note is absolute and self-operative, and that the Statute of Limitations commenced to run against the balance due thereon immediately upon default in payment of a single installment. Under this contention, the cause of action for the full amount due on each note would have accrued upon the default in payment of

the installment due on June 1, 1932, and the claim would have been barred six years thereafter. This contention is without merit.

Where the acceleration clause in an instrument expressly provides that it shall be effective " at the option of " the holder, there can be no doubt that the Statute of Limitations does not begin to run, so far as the principal debt is concerned, until the maturity date or dates specified in the instrument. (*Quackenbush* v. *Mapes*, 123 App. Div. 242; *Moline Plow Co.* v. *Webb*, 141 U. S. 616; 6 Williston on Contracts, [rev. ed. 1938] § 2025.) In *Quackenbush* v. *Mapes* (*supra*) the action was brought to foreclose a mortgage. Both the mortgage and the bond contained a provision that in case of default in the payment of interest, the principal sum should, after thirty days, become due and payable, at the option of the mortgagee. In considering the defense of the Statute of Limitations, the court said: " Here a time was fixed for payment and the mortgagee had an absolute right to wait until that time arrived before demanding payment, and the mortgagor could not compel him to accept payment in advance. Until he exercised his option, either by making demand or by commencing an action, his right to maintain an action was not complete. Not only this, but the clause was inserted in the bond and mortgage for the sole benefit of the mortgagee. The mortgagor could not compel him to accept payment after a default and it would be an inequitable and unjust rule to permit a mortgagor, by his own default, to restrict in any way the rights of the mortgagee " (p. 245).

Even in cases where the acceleration clauses contain no specific language expressive of an option on the part of the creditor, the great weight of authority seems to support the view that the statute does not commence to run until the specified maturity date, unless the creditor take some affirmative action to mature the claim earlier. The effect of such a clause is stated by Judge THAYER in *Keene Five Cent Savings Bank* v. *Reid* (123 Fed. 221, 224; certiorari denied, 191 U. S. 567) where he said that " the decided weight of reason and authority is in favor of the view that such provisions are not self-operative; that they are for the benefit of the creditor, and intended to give him, on grounds of convenience, the right to treat the entire debt as matured " if the promises contained in the agreement are not fulfilled. Such provisions are regarded as arming the creditor with an additional right " in the nature of a right to declare a forfeiture or to exact a penalty, which he may or may not exercise, and as a right which the courts will never regard as having been exercised by the creditor, or as having an effect upon the period of maturity specified in a note or bond, without some affirmative action on his part, such as a notification to the debtor, by suit or

otherwise, that on account of the default he elects to treat the entire indebtedness as due."

Such clauses are similarly construed by eminent text writers on this subject. " It seems, however, a fairer construction of such a provision — obviously intended as it is solely for the advantage and security of the creditor — to hold that the acceleration of maturity does not occur unless the creditor so elects, even though in terms the provision is absolute." (6 Williston on Contracts [rev. ed. 1938], § 2025.) " The weight of authority and the better view construe the acceleration provision as giving the holder an option to declare the whole sum due, which he can exercise by demand, suit, foreclosure and similar acts. Since the provision is primarily for his benefit, he can waive it, if he wishes." ("Acceleration Provisions in Time Paper," 32 Harv. Law Rev. 747, 767, Zechariah Chafee, Jr.) The same view is expressed in the decisions in many other jurisdictions. (*Richardson* v. *Warner,* 28 Fed. 343; *Belloc* v. *Davis,* 38 Cal. 242; *Mason* v. *Luce,* 116 id. 232; 48 P. 72; *Richards* v. *Daley,* 116 Cal. 337; 48 P. 220; *Watts* v. *Hoffman,* 77 Ill. App. 411; *Summers* v. *Wright,* 231 Ala. 372; 165 So. 87; *Lowenstein* v. *Phelan,* 17 Neb. 429; 22 N. W. 561; *Cox* v. *Kille,* 50 N. J. Eq. 176; 24 A. 1032; *Meadows* v. *Bryan,* 195 N. C. 398; 142 S. E. 487; *Watts* v. *Creighton,* 85 Iowa, 154; 52 N. W. 12; *First National Bank* v. *Parker,* 28 Wash. 234; 68 P. 756; *White* v. *Krutz,* 37 Wash. 34; 79 P. 495; *Wall* v. *Marsh,* 9 Bax. [Tenn.] 438; *Puthoff* v. *Walker,* 213 Mo. App. 228.)

Under the rule as enunciated by these authorities, it is immaterial whether or not the acceleration clause expressly states that it is to be effective at the option of the creditor, for the courts will regard it as having been so intended even though the provision seems to be absolute on its face. Such is the reasonable and logical interpretation of such a provision and would seem to express the clear intention of the parties.

Further confirmation of such an interpretation may be found in the legislative command expressed in subdivision 2 of section 254 of the Real Property Law. It is there directed that a covenant in a bond or mortgage that the whole of the principal sum shall become due after default in the payment of any installment of principal must be construed as meaning that should any default be made in the payment of any installment of principal on any day when it is payable, then the whole sum shall at the " option of the said mortgagee or obligee," become and be payable. (*Albertina Realty Co.* v. *Rosbro Realty Corp.,* 258 N. Y. 472; *Seligman* v. *Burg,* 233 App. Div. 221.) Moreover, in applying the Statute of Limitations, such a construction accords with that liberal interpretation of the

statute in favor of claimants which reason and authority compel us to employ. (*National Surety Co.* v. *Ruffin*, 242 N. Y. 413, 418; *Olcott* v. *Tioga R. R. Co.*, 20 id. 210, 223.)

The decisions upon which the counsel for the petitioner relies have no direct relevancy to the facts here. Such cases as *Banzer* v. *Richter* (68 Misc. 192; affd., 146 App. Div. 913) and *Strong* v. *Strong* (231 id. 814) involved the application of the rule prohibiting the splitting of a cause of action. For the purpose of measuring the effect of the Statute of Limitations, several breaches of contract may be distinct and severable, while for other purposes they may constitute only a single cause of action. (*Green* v. *Petersen*, 218 N. Y. 280, 282.) Similarly, though there may be an anticipatory breach of contract, the Statute of Limitations begins to run only from the time fixed in the contract (*Ga Nun* v. *Palmer*, 202 N. Y. 483; Restatement, Law of Contracts), but if the injured party chooses to bring an action before such time and before all damages are susceptible of proof, he may bar himself from further action for the breach. (Cf. *Pakas* v. *Hollingshead*, 184 N. Y. 211, 216; *Schell* v. *Plumb*, 55 id. 592.) Moreover, when the holder of an instrument elects to accelerate payment pursuant to the contract, the cause of action may be deemed to accrue on the date of the default upon which the election is based, and not upon the date of the election itself. (See Williston on Contracts, *supra*, p. 5684.) In the pending proceeding there never was any election to accelerate payment.

In the present proceeding, moreover, it is not necessary to decide when a cause of action would mature on a note which contained an acceleration clause absolute on its face. The clause in the notes in this proceeding provides that upon default the subsequent payments shall become due and payable at once " unless an extension is granted." It was thereby clearly contemplated that the option should rest with the payee. There is no evidence in the record as to whether or not an express extension was made. The contract does not require, however, that the creditor manifest his intention to grant an extension by a writing or in express words. No affirmative steps were taken by him to compel payment of the debt before the maturity dates stated in the notes. Since acceleration was optional with him, he may waive his right, and the waiver may be shown by mere inaction. (32 Harv. Law Rev., *supra*, at p. 767.) His acquiescence in the default and his subsequent inaction amounted to an extension. The defaulting debtor should not be heard to say now that an extension should have been reduced to writing or brought to his attention by unequivocal words.

The surrogate, therefore, holds that the executors are entitled to set off against the legacy the sum of $3,800, with interest from the date of default on each installment as it became due within the six years preceding the death of the decedent. After deducting that sum from the face amount of the legacy, the balance is directed to be paid to the assignee of the legatee.

Submit order on notice accordingly.