THE FIRST NATIONAL BANK OF BIRMINGHAM, Plaintiff, *v.* ROYAL MARCHER et al., Defendants.

Supreme Court, Trial Term, New York County, December 9, 1942.

*Karl W. Kirchwey* for plaintiff.

*Louis Salant* for Royal Marcher, defendant.

*William H. Yaeger* for Charles I. Safran, defendant.

HOFSTADTER, J. This action is brought to recover $7,425.24, the balance due on a promissory note secured by a mortgage on real estate. The action was instituted on June 30, 1938, and the parties agree that if the cause of action accrued to the plaintiff, or its predecessor, prior to June 30, 1932, it is barred by the Statute of Limitations in effect both in Alabama, where the real property is situated, and in New York, where the note and mortgage were executed.

The note and mortgage in question were executed on July 2, 1928, in the State of New York by the defendants, and mailed to the plaintiff's predecessor in Alabama. By the terms of the instruments, they were due and payable on the 2nd day of July, 1931, and on that day, at least, a cause of action to recover the full amount would have accrued to the plaintiff had it not been for an extension agreement, executed on that date, which was signed by the plaintiff in Alabama and subsequently signed by the defendants in New York, and delivered by mail to the plaintiff. Under the terms of this extension agreement, the due date of the principal obligation was postponed to July 2, 1932. Simultaneously with the execution of the extension agreement, the defendants executed and delivered to the plaintiff two promissory notes, each in the sum of $520, for the payment of interest. The first of these interest notes matured on January 2, 1932, and the second on July 2, 1932. The extension agreement provided, *inter alia*, that if either of the two interest notes were not paid when due, the agreement "shall be null and void and the then legal holder of the said principal note above described may proceed to enforce the payment thereof under the provisions of the said mortgage the same as if this agreement had not been made." The first of the interest notes, which matured on January 2, 1932, was not paid, and in March of that year the plaintiff foreclosed the mortgage on the real estate. At the foreclosure sale the real property realized the sum of $10,000, which was applied by the plaintiff in reduction of the principal debt.

The plaintiff contends that the legal relations between the parties to this suit are governed by the laws of the State of Alabama, and that under the laws of that State the failure of the defendants to pay the interest note due January 2, 1932, did not automatically accelerate the due date of the principal obligation to that date, but that it was optional with the plaintiff, at least as far as the running of the statute is concerned, to determine whether or not it should accelerate the principal obligation to January, 1932; and, further, it is contended on the part of the plaintiff that neither the foreclosure of the mortgage nor any other conduct of the plaintiff indicated such an intention.

On the other hand, the defendants argue that upon their failure to pay the interest note, due in January, 1932, the principal obligation automatically became due and payable and that the present cause of action, as well as the cause of action to foreclose the mortgage, accrued on that date. They deny that the decisions of the Alabama courts are in conflict with their view and maintain that, in any event, the relations of the parties are governed by the laws of the State of New York and that in New York, at least, the failure to pay the interest note in January, 1932, under the circumstances of this case, accelerated automatically the due date of the entire obligation.

To resolve this conflict, resort must be had to principles and doctrines with respect to which the courts of this and other States are sharply divided; and, in the perplexity thus arising, the plaintiff says that it would be a harsh result to give effect to the Statute of Limitations, while the defendants say it would be harsh not to do so. "Hard cases, it has frequently been observed, are apt to introduce bad law." (ROLFE, B., in *Winterbottom* v. *Wright,* 10 M. & W. 109.) In determining the close issue arising in this case, I have borne in mind that the Statute of Limitations is grounded in an ancient and sound public policy. The extinction of debts by the lapse of time has Biblical authority as well as the authority of the civil law. The legal maxim, "*Vigilantibus et non dormientibus jura subveniunt,*" is as ancient as the Roman Law itself. Although application to varying factual situations frequently involves difficult problems for judicial determination, the fixed period of time which our statutes provide for the assertion of causes of action must be strictly followed by the courts in a proper case.

I am persuaded that the Alabama law must be resorted to for the interpretation of the contract between the parties and for the fixing of their respective rights. I see no distinction between the case at bar and the decision in *McGough* v. *Derby*

(254 App. Div. 708). The facts in that case·are precisely similar to those here, except that there a bond instead of a note evidenced the principal obligation, and it was held that the law of the State of New Jersey with respect to the running of the Statute of Limitations must prevail in a suit to recover a deficiency, inasmuch as the mortgaged real property was located in that State and the action to foreclose the mortgage had been maintained there; and this in spite of the fact that the bond and the mortgage had been made and delivered in New York. (To the same effect, see *Stumpf* v. *Hallahan,* 101 App. Div. 383; affd., 185 N. Y. 550.)

In applying the law of Alabama to determine when the cause of action fully matured, we must have a clear view of what is involved in the controversy. If, as the plaintiff would have it, this was a case of the usual instalment contract, I would be obliged to hold that under the Alabama law the failure to pay one instalment does not automatically accelerate the entire debt for the purposes of the Statute of Limitations. But if, as contended by the defendants, the parties rendered manifest their intention by the particular language of the extension agreement, that the entire amount should accrue immediately to the plaintiff upon the failure to pay the interest note in January, 1932, it cannot be doubted that there is nothing in the Alabama cases that have been cited, or in any case from any jurisdiction, which would prevent the debt from becoming due automatically on the failure by the defendants to pay the interest note due in January, 1932.

The plaintiff seeks to assimilate this case to the common situation where payments are due in a series of instalments and the contract provides that on the failure to pay one instalment the entire debt becomes due. The Alabama court, in *Summers* v. *Wright* (231 Ala. 372), has held that in such a case the cause of action, as far as the Statute of Limitations is concerned, does not automatically accrue upon the failure to pay any one instalment, and that the case is no different from those cases in which the contract provides that upon the failure to pay any one instalment the entire amount becomes due " at the option of the obligee." The courts in some jurisdictions have sharply differed with the Alabama courts. In New York no definitive determination seems to have been made. Two decisions in this court held that the failure to pay an instalment automatically matures the entire debt. (*Druskin* v. *P. D. R. Construction Corp.,* 18 N. Y. Supp. [2d] 225; *National City Bank of New York* v. *Ward,* New York Law Journal, Dec. 3, 1940, p. 1841;

DINEEN, J.) On the other hand, a decision in the Surrogate's Court holds that the acceleration is optional with the plaintiff. (*Matter of Steinway,* 174 Misc. 554.)

The appellate courts of this State apparently have not passed upon the precise question here involved, although dicta in cases not involving the Statute of Limitations, like *Strong* v. *Strong* (231 App. Div. 428) and *Banzer* v. *Richter* (68 Misc. 193; affd., 146 App. Div. 913), would seem to indicate that they tend to the view that where no option is expressed in the agreement, the failure to pay an instalment automatically accelerates the due date of the entire debt. Throughout the land, however, the courts in various states have divided upon this question, the prevailing view being that the failure to pay an instalment does not automatically accelerate the due date of the entire debt. See cases collected in 34 American Law Reports Annotated, 895 *et seq.,* particularly the well-reasoned opinion in *Keene Five Cent Sav. Bank* v. *Reid* (123 Fed. Rep. 221 [1903]; certiorari denied, 191 U. S. 561). Even the view that where the contract expressly makes the acceleration optional with the plaintiff, nevertheless the statute begins to run from the default in paying any one instalment, is not without authority, albeit from a remote jurisdiction. (See *Falzon* v. *Adelaide Development Co., Ltd.,* [1936] So. Australian St. Rep. 93.)

As I have said, were this case of the usual instalment contract it would follow that under the Alabama law the failure to pay one instalment did not automatically accelerate the entire debt for the purposes of the Statute of Limitations, and this action would not be barred. But there are important distinctions between this case and the usual instalment contract case. Here, the language is not merely to the effect that upon the failure to pay a particular interest note the entire debt shall become due. Stronger and more emphatic language is used, which reveals a clear intention on the part of the parties that the cause of action for the entire amount should immediately accrue to the plaintiff. What other construction can be placed upon the language of the extension agreement to the effect that, upon the failure by the defendants to pay either of the interest notes, the agreement shall become " null and void " and " as if not written? " The complete nullification of the extension agreement by the event which has happened indicates clearly the intention of the parties that the cause of action for the full amount should promptly accrue to the plaintiff.

Moreover, the persistent course of conduct of the plaintiff, subsequent to the default in January, 1932, confirms this con-

struction of the agreement. The foreclosure of the mortgage and the demand of eight per cent interest on the debt, the legal rate for matured obligations as distinguished from the six and one-half per cent contract rate, tend to show that the plaintiff itself realized that nothing more was needed — no further action by it was required to mature the entire obligation. (See *Estes Lumber Co.* v. *Investors Syndicate,* 223 Ala. 408.)

In this view of the case, which I have adopted, the rights of the parties clearly emerge. It becomes apparent that, by the terms of the extension agreement, the parties agreed that the failure to pay the interest note due January 2, 1932, promptly revived the cause of action, which the plaintiff had on July 2, 1931, to sue for the entire amount; that on January 2, 1932, the plaintiff acquired a *right,* as distinguished from a mere *power,* to use the analysis of Hohfeld, to bring an immediate suit for the entire amount due him. In pursuance of this right, the plaintiff brought its proceedings to foreclose the mortgage and applied the proceeds of the foreclosure sale to the partial extinction of the debt. Its cause of action for the balance was then fully ripened and matured, and the Statute of Limitations began to run against it. Since all this occurred prior to June 30, 1932, it is clear that when the action to recover the balance due was finally instituted on June 30, 1938, it was already barred by the period of limitation.

Judgment directed for the defendants.