Joseph H. Thompson, as Ancillary Executor of Jacob Rauers, Deceased, Plaintiff, *v.* James C. Willson, Defendant.

Supreme Court, Trial Term, New York County, November 10, 1944.

*Charlton Ogburn* for plaintiff.

*James H. Halpin* and *William D. Tucker* for defendant.

Hofstadter, J. This action was originally brought to recover the sum of $323,479.27 on four notes. It is now conceded, however, that all but $100,000 (the last note), with interest thereon from December 6, 1938, is barred by the Statute of Limitations.

Six notes in all were given in part payment for the purchase price of real property and secured by a mortgage on the prop-

erty. The defendant, maker of the notes and purchaser of the property, on July 25, 1929, conveyed the real property to a corporation which, by agreement with him not revealed in the conveyance and apparently not otherwise made known to the plaintiff, assumed the payment of the notes in question. Subsequently, two of the notes were paid, but the maturity of the four notes above referred to was, on April 1, 1932, extended for a period of two years, with the full concurrence of the defendant. Thereafter on April 8, 1936, plaintiff agreed to forbear the prosecution of any foreclosure of its mortgage until December 31, 1937. This agreement was made without the knowledge or consent of the defendant. The mortgage contained a provision to the effect that upon default in the payment of any one of the notes, the plaintiff might declare the entire indebtedness due and payable.

Upon these facts, the defendant contends that he is without liability: first, because the claim is barred by the Statute of Limitations; and second, because the extension of time given to the grantee had the effect of discharging the defendant from his liability on the note.

The principles of law applicable to this case are ancient and familiar — but their application to specific facts frequently has been the source of perplexity. The plaintiff does not challenge — as indeed he may not under the well-established rules — that where a grantee, who has assumed the payment of a mortgage debt, secures an extension of time within which to make payments thereon without the consent of the mortgagor, the mortgagor is thereby discharged. (*Calvo* v. *Davies et al.*, 73 N. Y. 211; *Metzger* v. *Nova Realty Co.*, 214 N. Y. 26.) Nor is it relevant, since the enactment of subdivision 2 of section 33 of the Personal Property Law in 1934,[*] that the agreement to extend may be without consideration. There is no doubt that the letter of April 8, 1936, signed by the plaintiff, constitutes such an agreement to extend the time of payment. Indeed, the letter expresses consideration; but whether the payment of taxes referred to constitutes consideration or not is irrelevant in view of the plain provisions of the statute referred to.

A more serious difficulty, however, raised by the plaintiff concerns the fact that, as it is alleged, the plaintiff had no knowledge, at the time the extension was made, of the assumption of the mortgage debt by the grantee. And, indeed, it has been held by several courts of co-ordinate jurisdiction that in the absence

[*] Said subdivision as added by L. 1934, ch. 142, was repealed by L. 1936, ch. 281 (eff. April 6, 1936), which added a new but similar subdivision 2.

of such knowledge, the extension of time does not have the effect of discharging the mortgagor. (*White* v. *Augello,* 142 Misc. 233; *Title Guarantee and Trust Co.* v. *Weiher,* 30 Misc. 250; *Mead* v. *Parker,* 29 Hun 62.)

But these decisions appear to be highly doctrinaire and to avoid the realities of such transactions. The principle which lies at the root of the discharge of the mortgagor by an extension given to his grantee has frequently been asserted to derive from the laws of principal and surety. I do not believe that, on careful analysis, the doctrines of principal and surety can be made to apply to this situation, and while the language of the courts would seem to import the law of principal and surety into situations of this character, the analogy falls short at several points. It is difficult to perceive how a mortgagor, who is himself a principal debtor, can become a surety merely by the act of conveying the property which is subject to the mortgage. Experience with actual transactions would lead rather to the conclusion that, when a mortgagee undertakes to extend the time of payment of the mortgage by contract with the grantee and does not bother either to inquire whether there has been an assumption of the mortgage debt or to secure the consent of the mortgagor, his true intention is to undertake a new relationship with respect to the mortgage, substituting the grantee as the person liable in the place and stead of the grantor. That intention, I believe, can well be inferred from the failure of the mortgagee to concern himself at all with the continuation of the obligation of the mortgagor. For, any prudent mortgagee who wished to preserve the continued liability of the mortgagor upon the debt, inevitably would have that problem in mind when arranging an extension for the time of payment with the grantee of the mortgagor.

It would seem that a more fruitful source of analogy could be found in the principles of novation; whereby one may assume that by the specific conduct indicated, the mortgagee has substituted the grantee of the mortgagor as his debtor in place and stead of the mortgagor, whom he has thereby discharged from all liability. Certainly, experience in real estate transactions, particularly in the extension of mortgages — a frequent enough occurrence among real estate dealers — can lead to no other conclusion; and these realities seem to me to be a more potent mainspring of judicial decision than any theoretical assumption that a principal debtor has by some manipulation of " legal litmus paper " transferred himself from a principal debtor to a surety.

And the result would be the same if a determination be predicated on the Statute of Limitations. We do not have here the problem which I discussed at length in *First National Bank of Birmingham* v. *Marcher* (179 Misc. 258) of determining whether, under a set form of ambiguous language, the failure to pay one installment of a debt automatically accelerated the whole debt, or merely did so at the option of the creditor. As to that matter, as I pointed out, the decisions are in conflict. Here, the language of the acceleration clause is unambiguous and specifically provides that the acceleration shall take place only at the option of the mortgagee. The problem then is one of fact: to determine whether the mortgagee, in 1935, did indeed exercise the option and accelerate the debt so that the entire amount matured then. If so, it is conceded that the statute is a bar to this action.

I can place no other interpretation upon the letter of September 30, 1935, addressed by counsel for the plaintiff to Mr. Keys than that it had been determined to mature the entire indebtedness. It does not matter that the plaintiff might have been willing to accept payment in installments even at that time, as is perhaps clear; but the assertion of the legal position of the plaintiff with respect to the maturity of the entire debt appears not only from that letter but also from the letter of September 25, 1943, in which the statement is categorically made that the " total due September 29, 1935 ", is $491,460. It is clear from these letters that the plaintiff was asserting his legal right to collect the entire amount due, even though other correspondence and circumstances in the case indicate his willingness to accept the amount due in several installments.

Both, therefore, on the familiar principles applicable to the discharge of mortgagors by extensions granted to the owners of real property and because of the Statute of Limitations, I must hold that no liability on the part of the defendant has been established. Accordingly, there will be judgment for the defendant.